1 [Reported by Samuel Blatchford, Esq.]

## Case No. 7,619.

### The KATE HERON.

[6 Sawy. 106.] [1]

District Court, D. Oregon. Nov. 18, 1879.

#### FORFEITURE OF VESSEL—RULE AT COMMON LAW— "LIABLE TO FORFEITURE"—BONA FIDE PURCHASER.

1. Whether a forfeiture given by statute takes effect upon the commission of the act on account of which it is given, or upon the seizure or condemnation of the property, depends primarily upon the intention of congress as evidenced by the language of the statute; but when that is doubtful or uncertain, resort may be had to the rules of the common law relating to forfeitures.

2. A forfeiture of lands at common law related to the time of the commission of the offense; but in case of chattels, the forfeiture did not take effect until the conviction of the offender, or a finding that he had fled.

3. Section 4189 of the Revised Statutes, which declares that for the commission of a certain act a vessel "shall be liable to forfeiture," does not effect a present absolute forfeiture, but only gives a right to have the vessel declared forfeited upon due process of law, and the property in the same remains in the owner until seizure and condemnation, which latter relates back to the time of seizure, and invalidates all intermediate sales.

4. A purchaser in good faith of a vessel liable to forfeiture under said section 4189, and before seizure. acquires the title thereto. and may hold the same against the United States.

In admiralty.

Rufus Mallory, for the United States.
Sidney Dell, for claimant.

DEADY, District Judge. This suit is brought by the district attorney on behalf of the United States, to enforce an alleged forfeiture of the schooner Kate Heron, [Walter V. Niles, claimant] her tackle, apparel, and furniture. for the violation of sections 4189 and 4377 of the Revised Statutes.

The libel contains two counts. The first one is drawn under the former of said sections, and alleges that on January 17, 1878. A. Y. Hamilton, as sole owner of said vessel, applied to the collector of the district of Wallamet for a license to carry on the coasting trade, and to that end took and subscribed before John P. Ward, a deputy collector of the customs. the oath required by section 4143 of the Revised Statutes, to the effect among other things, that he was the true and sole owner of said vessel, and that no subject of any foreign power was in any way interested therein or in the profits thereof; in both of which particulars said oath was knowingly false, in this: that Alexander McKenzie, a subject of Great Britain. was then a half owner of said vessel, and as such directly interested in the profits thereof; that by reason of such false and fraudulent representations such vessel was enrolled and licensed by said collector for the

1 [Reported by L. S. B. Sawyer, Esq., and here reprinted by permission.]

coasting trade, which enrollment and license were thus fraudulently obtained.

The second count is drawn under the latter of said sections, and alleges that on January 10, 1878, the Kate Heron being a licensed vessel was transferred in part by said A. Y. Hamilton, to Alexander McKenzie aforesaid, for the sum of eight hundred and fifty dollars.

The claimant excepts to the first count of the libel, for that it appears therefrom that said oath was taken before "a deputy collector of customs," and "not before the collector," and is therefore invalid; and answers the second count denying that at the time of the alleged transfer to McKenzie the Kate Heron was a licensed vessel, for the reason that prior thereto she had been conveyed to said Hamilton by William Thompson, whereby her license became revoked.

The answer also contains a plea in bar or peremptory exception to the whole libel, to the effect that on April 7, 1879, the claimant purchased the vessel from said Hamilton in good faith and for "a full and valuable consideration," without any knowledge of the alleged transfer, or that said vessel was liable to forfeiture.

The libelant excepts to this plea for the reason that it appears therefrom that the claimant purchased the vessel long after the forfeiture thereof accrued to the United States.

This plea does not purport to be made to either count of the libel, but upon the argument it was taken for granted that it applied only to the first count. Then, it follows that there is an exception to this count because it does not state a cause of forfeiture upon its face, and also an exception which admits such forfeiture, but avoids it as to the claimant.

These exceptions operate as a demurrer and plea in confession and avoidance to the same matter would at common law. I do not think they can be taken together, and therefore the latter must be construed as a waiver of the former.

The point of this first exception, however, is that as the statute (Rev. St. § 4142) provides that a vessel shall be registered before "the collector," and (Id. § 4141) that the owner's oath for that purpose shall be taken before the officer authorized to make such registry, such oath cannot be administered by a deputy collector. Section 4312, Rev. St., provides that the regulations concerning the registration of vessels shall apply to the enrollment thereof. Section 2630, Id., authorizes the collector of customs, with the approval of the secretary of the treasury, to employ as many deputies as he may deem necessary, which deputies are declared to be officers of the customs. Assuming that Ward was a deputy collector under this section, it is difficult to see why he was not authorized to administer this oath. The au-

thority to appoint a deputy is explicit and unqualified. A deputy is one authorized to stand in the place of another; he exercises the office or right of another. Bouv. Law Dict. verbum Deputy; Burrell, Law Dict. Id.

The power of the deputy extended as far as his principal's either under the administration of the law relating to customs or navigation. The exception, if not waived, is not well taken.

The validity of the defense set up in the plea depends upon the question whether the forfeiture declared in section 4189 of the Revised Statutes takes effect upon the commission of the offense or upon the commencement of proceedings to assert the right of the government to the same.

At common law a judgment of death for treason or felony worked a forfeiture of the lands of the criminal, which, for the purpose of avoiding all alienations, had relation back to the time of committing the offence; while in the case of goods and chattels forfeited for the crime of the owner, the forfeiture arose upon the conviction or verdict, or a finding that the party had fled, and had no relation backwards, so that a bona fide sale between the commission of the offense and the conviction or flight was not affected thereby. 2 Bac. Abr. 733; 4 Bl. Comm. 381, 387; U. S. v. 1,960 Bags of Coffee, 8 Cranch [12 U. S.] 409. But in the case last cited, the supreme court held that when an act of congress declares that a chattel shall be forfeited for the commission of a particular act, there the forfeiture takes place upon the commission of such act, and the statute operates to transfer the title at once to the government, so as to avoid all subsequent sales of the property, however innocent the purchaser.

Afterwards, the supreme court, in Caldwell v. U. S., 8 How. [49 U. S.] 381, and Henderson's Distilled Spirits, 14 Wall. [81 U. S.] 56, held that where a statute declares a forfeiture absolutely, as that a particular thing shall be forfeited, for the commission or omission of a particular act, there the decree of condemnation relates back to the wrongful act, and the forfeiture takes effect from that time so as to avoid all subsequent sales.

But in U. S. v. Grundy, 3 Cranch [7 U. S.] 340, where the statute gave a forfeiture in the alternative, as follows, "there shall be a forfeiture of the ship or the value thereof," the court held that the government acquired no property or right in either until it elected which to take and commenced proceedings therefor; and this ruling was affirmed and followed in Caldwell v. U. S., supra.

Section 4199 of the Revised Statutes, under which this count is framed, reads as follows: "Whenever any certificate of registry, enrollment, or license, or other record or document granted in lieu thereof, to any vessel is knowingly and fraudulently obtained, or used for any vessel not entitled to the

benefit thereof, such vessel, with her tackle, apparel, and furniture, shall be liable to forfeiture." This is section 24 of the act of July 18, 1866 (14 Stat. 184), "further to prevent smuggling and for other purposes," and is amendatory of the statute (section 27) of December 31, 1792 (1 Stat. 298). "concerning the registry and recording of ships or vessels."

The amendment consists in making the obtaining a certificate as well as the using of it a cause of forfeiture, and in the addition of the words "enrollment or license," thus making the section applicable to vessels engaged in domestic commerce as well as foreign. The language in which the forfeiture is declared is also changed from "shall be forfeited" to "shall be liable to forfeiture."

Does this section as it now stands impose a present, absolute forfeiture of the vessel, coincident with the commission of the unlawful act, or does it merely give the United States a right of action to have the same declared forfeited by due process of law?

The language used. "shall be liable to forfeiture," imports nothing more than that the thing used in the commission of the unlawful act may be seized and adjudged forfeited to the United States. The word "liable" in no sense signifies a present and absolute loss, punishment, or injury, but only something which may befall the person or thing so situated. A surety is liable for the debt of his principal; that is, in a certain contingency—the default of the principal—he may be compelled to pay it. Soldiers are liable to be killed, and sailors to be drowned, but neither of these liabilities is death. A fraudulent debtor is liable to imprisonment, but this of itself does not deprive him of his liberty. Webster defines "liable" thus: "Obliged in law or equity; subject," —and says it "denotes something external which may befall us." As an illustration he quotes the lines from Milton:

But what is strength without a double share
Of wisdom? Vast, unwieldy, burdensome,
Proudly secure, yet liable to fall
By weakest subtleties.

In The Ranier [Case No. 11.565]. this court held that the provision in section 2 of the steamboat act of 1838 (5 Stat. 304), which declared that the vessel should be liable for certain penalties thereby imposed upon the owner, did not give the United States any interest in such vessel until a seizure thereof.

The substitution of the language. "shall be liable to forfeiture," for "shall be forfeited," indicates that it was the intention of congress when it enlarged this section, so as to make it applicable to vessels engaged in domestic commerce, to change the time when a forfeiture for its violation should take place, so that such vessels might be bought and sold without the danger of an innocent purchaser being affected by the secret taint of a prior, but unknown, violation of the law.

Both the language of the statute and the reason of the thing concurring to show that the section does not work a forfeiture coincident with the commission of the unlawful act, it is proper, in the words of the court in U. S. v. 1,960 Bags of Coffee, 8 Cranch [12 U. S.] 409, "to resort to analogy and the doctrine of forfeiture at common law, to assist the mind in coming to a conclusion" as to when and against whom the forfeiture was intended to take effect.

As has been shown, at common law, goods and chattels forfeited for the personal offence of the owner did not become the property of the king until after the conviction or fugam fecit found, so that a sale to a bona fide purchaser between the commission of the offense and the verdict of guilty or flight was a valid transfer of the property. But when the forfeiture is made. as in this case, to attach to the thing by means of which the offence is committed, the proceeding to declare the forfeiture may be and usually is commenced by a seizure of the offending property. In such case, the forfeiture, when found, related back to the seizure so as to cut off intermediate sales. The reason of this distinction is apparent. By the act of seizure the owner is divested of the possession, and thereafter no one deals with the owner upon the faith of it. The property being taken into the custody of the law upon a charge of having been instrumental in the commission of the wrong. whoever purchases it does so at his peril. and subject to the claim of the government upon which such seizure took place.

And such I think is the effect of the statute. It does not work a present forfeiture of the vessel. but only makes it liable to forfeiture by due process of law. But until a seizure is made for the purpose of enforcing this liability, the title to the vessel is in the owner, and a purchaser from him in good faith acquires the same and may hold the property against the government. which by neglecting to assert its right has lost it.

In this case. the transfer of the vessel to the claimant was made on April 7, 1879, while the seizure did not take place until the 29th of the following August, at which time Hamilton had no interest in the vessel, and therefore it was no longer liable to forfeiture as his property, and for acts done before the sale to the claimant.

The plea is good, and the exception thereto is disallowed.